IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 13, 2000

## RONNIE BRADFIELD v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-18580      James C. Beasley, Jr., Judge**

---

**No. W1999-02344-CCA-R3-PC  - Filed March 9, 2001**

---

Petitioner, Ronnie Bradfield, was convicted by a jury in the Shelby County Criminal Court of three counts of attempt to commit second degree murder, which this Court affirmed on direct appeal. Petitioner subsequently filed a pro se petition together with an amended and supplemental petition for post-conviction relief alleging, primarily, ineffective assistance of counsel. The post-conviction judge denied relief following an evidentiary hearing which took place over numerous days. Petitioner now appeals the judgment of the post-conviction court denying his petition. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID G. HAYES, J., joined.

Ronnie Bradfield, Tiptonville, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; William L. Gibbons, District Attorney General; Paula Wulff, Assistant District Attorney General; and John W. Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In 1993, the petitioner, Ronnie Bradfield, was indicted for three counts of attempt to commit first degree murder. After a jury trial, Petitioner was convicted in the Shelby County Criminal Court of three counts of attempt to commit second degree murder and sentenced to three terms of nine years to be served concurrently. Petitioner appealed his convictions, and this Court affirmed the trial court's judgment on July 19, 1995. State v. Ronnie Bradfield, No. 02C01-9306-CR-00112, 1995 WL 422787, Shelby County (Tenn. Crim. App., Jackson, July 19, 1995), perm. to appeal denied (Tenn. 1996). Petitioner timely challenged his convictions in a pro se petition for post-conviction relief and also through an amended and supplemental petition filed by appointed counsel. The petition, as amended, primarily alleged ineffective assistance of trial counsel. The evidentiary

hearing was held in April, June, and October of 1998. On March, 19, 1999, the post-conviction court entered an order denying Petitioner relief.

On appeal, Petitioner now argues that the post-conviction court erred (1) by ruling that Petitioner received effective assistance of counsel; (2) by failing to rule on each and every issue as required by Tenn. Code Ann. § 40-30-211; (3) by ruling that Shelby County Criminal Court Rule 6.03 barred the filing of pre-trial motions by Petitioner's counsel; (4) by refusing to bifurcate the proceedings or grant a continuance so that a witness who was not present at the post-conviction hearing could testify at a later time; (5) by refusing to recuse because of prejudice against Petitioner; and (6) by convicting Petitioner without having jurisdiction because one of the indictments failed to include the mens rea of "intentionally" in its allegations of the offense. Petitioner has also alleged on appeal errors in the jury's conduct during deliberations and in the trial court's instructions to the jury.

After a review of the record and applicable law, we hold that the only issues properly before us are the first six issues listed above. Regarding the first, ineffective assistance of counsel, we conclude that Petitioner has not established counsel's performance was below the level of competence demanded under Baxter v. Rose, 523 S.W.2d 930 (Tenn.1975). He has also failed to establish prejudice as required under Strickland v. Washington, 466 U.S. 668 (1984). As to the next five errors allegedly committed by the post-conviction court, we hold that Petitioner has not met the burden of proving his allegations by clear and convincing evidence. The remaining two issues are waived. See Tenn. Code Ann. § 40-30-206(f)-(g) (1997). Accordingly, we affirm the post-conviction court's denial of relief.

## I. Background

The facts leading to the underlying convictions are taken from a review of this Court's opinion in the direct appeal. On February 21, 1992, the Memphis Police Department received a call that Petitioner was making threatening phone calls to the director of the police and the mayor. Petitioner was standing outside his home when the police arrived. The police told Petitioner they needed to speak with him, but he walked into his house as they approached. The police followed Petitioner and entered his house, their weapons still in their holsters. They noticed the muzzle of a gun in Petitioner's possession. A brief shootout between Petitioner and the police ensued. Afterward, Petitioner was arrested.

Petitioner initially retained Walter Evans as counsel for trial. Shortly after the preliminary hearing, Petitioner discharged Evans and retained attorneys Handel Durham and Alan Chambers. Durham and Chambers represented Petitioner until two weeks prior to the trial date. At that time, Petitioner fired Durham and Chambers and rehired Evans. Evans defended Petitioner throughout the trial proceedings. At the conclusion of proof, Petitioner was convicted and sentenced. Petitioner appealed. His sole issue on appeal was whether the evidence was sufficient to convict him. This Court affirmed the trial court's judgment.

Petitioner timely filed a pro se petition for post-conviction relief on June 3, 1997. He raised the following grounds for relief, all centered on a claim of ineffective assistance of trial counsel: (1) counsel failed to file the necessary pre-trial motions, even though a portion of the evidence admitted at trial was illegally obtained and a motion to suppress was warranted; (2) counsel failed to object when one of the three indictments against Petitioner was fatally flawed and, therefore, the trial court lacked jurisdiction; (3) counsel failed to utilize documents which were available to impeach prosecution witnesses and prove Petitioner's innocence; (4) counsel failed to investigate properly and call witnesses for Petitioner; (5) counsel failed to develop all defenses available to Petitioner; (6) counsel failed to object to improper and prejudicial comments by the State during closing argument; (7) counsel failed to object to improper jury instructions; (8) counsel failed to properly prepare Petitioner for his sentencing hearing and to present mitigating factors during same; and (9) counsel failed to object when the prosecutor selectively excluded African-American jurors during jury selection. On June 17, 1997, Viola Johnson was appointed as Petitioner's counsel to assist with his post-conviction petition. Johnson prepared and filed an amended and supplemental petition which contained allegations of ineffective assistance of counsel similar to the Petitioner's original petition, i.e., trial counsel failed to (1) file necessary pre-trial motions, (2) present all available defenses, (3) procure witnesses, and (4) impeach State witnesses when it was possible to do so. The amended petition further alleged that, but for counsel's lack of preparation and professional errors, the results of the proceeding would have been different.

In December 1997, Petitioner was dissatisfied with Johnson's legal assistance and filed a motion for appointment of new counsel. Petitioner claimed, inter alia, that he and Johnson had serious conflicts of interest, i.e., counsel hampered the progress of his defense and failed to represent him in a "zealous" manner. Johnson was allowed to withdraw from the case and on January 20, 1998, Petitioner was appointed new counsel, Garland Erguden. Petitioner thereafter filed a pro se motion requesting recusal of the presiding judge and a change of venue for his post-conviction proceeding. The motion was denied. Petitioner later filed another motion for new counsel as he was also disappointed by Egruden's lack of zeal. On March, 10, 1998, the court appointed a third attorney to assist Petitioner, Benjamin Head, whose representation continued throughout the remainder of the post-conviction proceedings in the trial court. At the conclusion of the evidentiary hearing, the post-conviction court denied Petitioner relief in a written order on March 19, 1999.

## II. Post-Conviction Hearing

The post-conviction hearing began on April 24, 1998 and was held sporadically through October 26, 1998. Petitioner's proof consisted of his own testimony plus the testimony of his trial counsel, two witnesses present during the shooting, one of three attorneys involved in his post-conviction petition, and a neighbor. The State's only proof was the testimony of the two attorneys who handled Petitioner's case after the preliminary hearing until two weeks prior to trial when Petitioner rehired Evans.

Petitioner testified that his trial counsel, Walter Evans, was ineffective for numerous reasons. Petitioner argued that Evans failed to handle pre-trial procedures appropriately. Specifically, he

alleged that Evans did not file the proper pre-trial motions, including motions for impeachment, estoppel, change of venue and to suppress evidence illegally seized by the police in violation of the Fourth Amendment. Petitioner testified that Evans neglected to object to the fact that one of the indictments against Petitioner was fatally flawed in that it omitted the word "intentionally" in the description for first-degree murder. In addition, Petitioner argued that Evans failed to investigate Petitioner's case properly. Petitioner claimed that he gave Evans a list of fourteen witnesses who had information relevant to Petitioner's defense but that Evans did not talk to any of them or call them to testify during trial.

Regarding Evans' performance during trial, Petitioner alleged that Evans should have objected to the racially-biased selection of jurors. Petitioner complained that the prosecutor systematically excluded all African-American candidates for jury duty during voir dire and, consequently, his trial was constitutionally infirm. Petitioner further testified that Evans failed to impeach State witnesses and to object to any one of the many erroneous statements made by the prosecutor during the trial. For example, Petitioner claimed that Evans should have pointed out to the jury the fact that the testimony of the police officers given at trial conflicted with the information contained in their official reports. Petitioner said that Evans also should have objected when the prosecutor told the jury that Petitioner used a .44 magnum when he actually used a different type of weapon and that Evans should have protested when the prosecutor claimed that the hole in the neighbor's house was made by a bullet when no proof was offered to support this statement. Petitioner argued that an effective attorney would have called experts to attest to which holes, if any, were truly bullet holes. Petitioner testified that Evans was also ineffective at trial when he neglected to develop additional defenses for Petitioner, such as duress and necessity, which were appropriate given the facts of the case. Petitioner claimed that Evans failed to object to improper statements made by the prosecutor in its closing argument to the jury and, also, that Evans failed to object when the judge gave the jury unconstitutional instructions. For instance, Petitioner maintained that he was unfairly prejudiced by a statement the prosecutor made to the jury that referred to Petitioner as "mentally disturbed." Petitioner further contended that the trial judge also erred when he used the terms "moral certainty" and "let the mind rest easy with the decision that you make" during jury instructions. Petitioner claimed that the way the judge placed these phrases within the framework of the jury instruction lessened the State's burden of proof and, therefore, Evans should have objected to it.

Concerning Evans' post-trial performance, Petitioner testified that Evans was ineffective during the sentencing process because he did not fully explain to Petitioner how the process operated. Moreover, Petitioner claimed that Evans failed to present mitigating factors to the court in Petitioner's behalf. For instance, Petitioner believed that the sentencing hearing was a proper forum for Evans to bring forth character witnesses to testify to Petitioner's good standing in the community. However, no witnesses were called.

During cross-examination, Petitioner was asked to give the court the names of the fourteen witnesses that Petitioner claimed he revealed to Evans prior to trial, but Petitioner could only remember two. Petitioner did not explain to the court how the testimony of any of the witnesses

would be relevant or helpful and he did not present any of them in court to testify. In effect, all of the missing witnesses remained missing. Then Petitioner was asked to read to the court a section of the trial record which showed that Evans did, in fact, object when the State presented evidence concerning a bullet hole in the neighbor's house–an objection which Petitioner claimed his counsel failed to make. Petitioner was also asked whether he was prepared to produce an expert to explain to the court how such testimony would have been helpful to Petitioner's defense. Petitioner failed to answer. Finally, the State requested that Petitioner produce the character witnesses who would have testified for him at the sentencing hearing and also give the court a list of the African-American jurors who were systematically excluded by the prosecutor at his trial. Petitioner declined to produce this information and acknowledged that his jury did include two African-American jurors.

Petitioner's trial counsel, Walter Evans, testified that he represented Petitioner at trial and to that end, he had discussed the case with Petitioner in detail and obtained the information necessary to defend him. Evans testified that Petitioner never expressed a desire that Evans canvass the neighborhood for evidence, nor did Petitioner provide him with a list of witnesses at any time during their relationship. To Evans' knowledge, Petitioner's mother and a man named Thomas Hill were the only adults present at the shooting incident, outside of the police officers involved, and they both testified at trial. No other persons had personal knowledge of facts relevant to the shooting. Evans testified that, in his opinion, Petitioner had a strong case on the theories of illegal entry and self-defense, and self-defense did not require testimony from anyone other than Petitioner. Evans testified that a defense of "duress" simply did not apply, given the facts of the case.

Evans further testified that when Petitioner requested that Evans represent him the second time, the trial date was only two weeks away. Moreover, the trial court made it clear to Petitioner at the time of his request to change attorneys that the trial would not be delayed to allow new counsel to prepare. Evans testified that he was familiar with Petitioner's case, however, because he represented Petitioner at the preliminary hearing and had conducted a thorough examination of the police officers at that time. In response to questions concerning Evans' failure to file pre-trial motions, particularly a motion to suppress, Evans testified that by the time he was reinstated as Petitioner's counsel the deadline for filing pre-trial motions had passed. Thus, Evans argued the illegal entry issue "extensively," albeit unsuccessfully, later in a post-trial motion for judgment of acquittal. Regarding Evans' failure to impeach the police officers' testimony, Evans testified that he cross-examined the officers at trial with a view to explore any and all inconsistencies in their statements. Moreover, before each cross-examination was concluded, Evans asked Petitioner whether there were any questions that Petitioner wanted Evans to ask the witness. Lastly, Evans testified that he filed no mitigating factors at the sentencing hearing because none applied.

Thomas Hill testified that he was present during the shooting incident. He testified that he remembered talking with Evans but did not recall the actual conversation. Hill also claimed that he did not testify at Petitioner's trial, even though the record shows he did. He further claimed that he did not remember any of the witnesses who testified, although he recalled being present in the courtroom.

Odester Hudson, Petitioner's mother, testified that she and a man named Thomas Hill were presented to Evans as the only witnesses inside the house during the shooting. She remembered Evans stating that he intended for only those witnesses who were inside the house to testify at trial.

Carey Mayfield, a neighbor of the Petitioner's, testified that she was at home on the day of the shooting. Mayfield said that she observed the police "everywhere" that day and went outside to investigate. When a police officer asked to use her telephone, she granted him permission and overheard the officer suggest that they "keep Mayor Herenton in surveillance [sic] because they did not have the guy . . . ."

Viola Johnson, one of Petitioner's attorneys, testified that she represented Petitioner for a short while during his post-conviction proceeding and that she filed an amended post-conviction petition for Petitioner. Johnson testified that she spoke with Evans regarding his use of witnesses during Petitioner's trial and that Evans was forthcoming with access to the information in his files. Johnson did not recall discovering any relevant or necessary witnesses that Evans did not call to testify but, if some had existed, Evans gave her a good reason for not calling them.

The State's sole evidence was the testimony of the attorneys, Handel Durham and Alan Chambers, who handled Petitioner's case after the preliminary hearing until two weeks prior to trial when Evans reassumed the role of counsel. Durham testified that the representation of Petitioner by himself and his partner, Alan Chambers, went smoothly until Petitioner wanted to proceed with a novel defense theory: Petitioner believed that whenever any person entered onto another person's property, the property owner had a right to shoot them. Durham explained to Petitioner that his reasoning was erroneous and without basis in the law. As Petitioner's counsel, he and his partner felt that a mental evaluation might be advantageous in resolving some of Petitioner's legal matters, but Petitioner adamantly refused to cooperate to this end.

Durham further testified that he requested a witness list from Petitioner but never received one. After Durham and his partner were fired by Petitioner, they gave Evans all of the materials they had gathered in preparation of Petitioner's defense. Durham testified that he and his partner each drafted a letter to Petitioner in an attempt to clearly apprize Petitioner of important matters that were pending when they withdrew from the case. Specifically, Durham's letter reiterated the State's offer of a fifteen-year sentence and also Durham's concern that Petitioner should have a mental evaluation. In addition, Durham implored Petitioner to give up the legal theory that a person was entitled to shoot whomever might wander onto his property and reiterated the fact that Petitioner refused to give them a witness list or let him and his partner continue to represent him. Durham testified that he had only two contacts with Petitioner after they ceased representation. On both occasions, Petitioner threatened to "blow the brains out" of Durham and his staff.

Alan Chambers, co-counsel with Durham, testified that he also wrote a letter to Petitioner after being fired. In his letter, Chambers informed Petitioner that the trial judge wanted Petitioner to undergo a mental evaluation to determine whether Petitioner was competent to stand trial. Chambers also voiced his concerns regarding Petitioner's "hostile, fearful, and suspicious" behavior

toward them and Petitioner's inability to logically assess his legal situation. Chambers confirmed that both he and Durham had requested a witness list from Petitioner but that none was forthcoming.

At the conclusion of the evidentiary hearing, the post-conviction court denied Petitioner relief in a written order. The order contained the following findings and conclusions: (1) Evans was not ineffective when he did not file pre-trial motions in contradiction to the deadline for filing as set out in the Shelby County Criminal Court Rules; (2) Petitioner failed to present proof to support his claim that any evidence was obtained illegally, therefore Petitioner had no legal ground to sustain a motion to suppress; (3) the indictment in issue was sufficient to place Petitioner on notice of the charges against him; (4) Petitioner failed to show that because Evans did not file motions and perform investigations, he was therefore ineffective or prove that, but for these alleged errors, the verdict would have been different; (5) Petitioner failed to present proof as to which jury instruction he considered erroneous and, after a review of the record, the jury instructions given by the trial court were proper; (6) Petitioner failed to present any proof as to what facts the "mystery witnesses" would have testified to and, therefore, Evans' failure to locate and call them does not constitute ineffective assistance of counsel; and (7) Petitioner failed to present proof regarding what African-American jurors were systematically excluded by the prosecution. After a review of the trial record, the records of pre-trial and post-trial appearances before the court, the history of Petitioner's post-conviction filings and pleadings and the post-trial record, the post-conviction court concluded that Petitioner received a fair trial by a jury of his peers in front of a respected jurist and, further, that his rights to a fair trial were not violated by ineffective representation of counsel.

### III. Analysis

Petitioner's request for post-conviction relief is governed by the Post-Conviction Procedure Act of 1995. See Tenn. Code Ann. § 40-30-201 to -310 (1997). In order to obtain post-conviction relief, a petitioner must allege that his conviction or sentence is void or voidable because of an abridgement of a constitutional right. Id. § 40-30-203 (1997). Petitioner must also include allegations of fact supporting each claim for relief set forth in the petition. Id. § 40-30-204(e). If granted an evidentiary hearing, petitioner has the burden of proving his allegations by clear and convincing evidence. Id. § 40-30-210(f). A post-conviction court shall dismiss any petition for post-conviction relief that claims relief for issues that have been waived or previously determined. Id. § 40-30-206(f) (1997). Section 40-30-206 defines "waived" and "previously determined" as follows:

> (g) A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
>
> > (1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if

> either the federal or state constitution requires retroactive application of that right; or
>
> (2) The failure to present the ground was the result of state action in violation of the federal or state constitution.
>
> (h) A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence.

Id. § 40-30-206(g)-(h). There is a rebuttable presumption of waiver when a petitioner fails to raise a ground for relief before a court of competent jurisdiction in which the ground should have been presented, which may be overcome by allegations of fact explaining why each ground for relief was not previously presented. Id. §§ 40-30-210(f), -204(e).

Findings of fact and conclusions of law made by the post-conviction court are given the weight of a jury verdict. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Consequently, this Court is bound by those findings unless the evidence contained in the record preponderates otherwise. Davis v. State, 912 S.W.2d 689, 697 (Tenn. 1995). Since the post-conviction court judge found the petitioner failed to establish that he was entitled to post-conviction relief, we review the record for the purpose of determining whether the facts preponderate against the judgment entered by the post-conviction court. In doing so, we are bound by certain well-established rules of appellate review. First, this Court may not reweigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Black, 794 S.W.2d at 755. In addition, any questions regarding the credibility of the witnesses, the weight and value to be given to their testimony, and the factual issues raised by the evidence are for resolution by the post-conviction court. Id. Lastly, a petitioner bears the burden of proof, and must show why the evidence in the record preponderates against the judgment entered by the post-conviction court. Id.

The above standards are slightly modified when the claim for relief is ineffective assistance of counsel. In State v. Burns our Supreme Court held that a claim of ineffective assistance of counsel raised on direct appeal raises mixed questions of law and fact, and thus is subject to a de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); see Fields v. State, ___ S.W.3d ___ (Tenn. 2001). The de novo review of a trial court's factual findings by an appellate court are entitled to a presumption of correctness, which is overcome only when the preponderance of the evidence is contrary to the trial court's findings of fact. Fields, ___ S.W.3d at ___; see also Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). Furthermore, in reviewing the trial court's application of law to its factual findings "to determine whether counsel's performance was deficient or whether the defendant was prejudiced by that deficiency, appellate courts should conduct a purely de novo

review, according to the trial court's conclusions of law no deference or presumption of correctness." Id. at ___. Lastly, a defendant alleging ineffective assistance of counsel must prove the *allegations of fact* underlying his claim by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997); Fields, ___ S.W.3d at ___. This standard of proof is required regardless of whether a petitioner is bringing the claim in a direct appeal or a post-conviction petition. See Burns, 6 S.W.3d at 461 n.5.

We note at the outset of our review that many of Petitioner's claims were unsupported by allegations of fact or clear and convincing evidence as required by T.C.A. §§ 40-30-204(e) and 210(f). Subsection 40-30-204(e) requires that the petitioner include allegations of fact to support each claim for relief and also explain why each ground was not previously presented in any earlier proceeding. Tenn. Code Ann. § 40-30-204(e) (1997). And, subsection 40-30-210(f) assigns the petitioner the burden of proving the allegations of fact by clear and convincing evidence. Id. § 40-30-210(f). We note that a pro se petition under the Post-Conviction Procedure Act is held to less stringent standards than formal pleadings drafted by lawyers. Swanson v. State, 749 S.W.2d 731, 735 (Tenn. 1988). Still, proof by clear and convincing evidence remains necessary. The findings and conclusions of the post-conviction court reveal that the proof presented by Petitioner at the evidentiary hearings was, for many issues, insufficient to allow the court to grant Petitioner relief. Petitioner's brief for this appeal similarly consists of myriad bare allegations and conclusory statements.

## A. Ineffective Assistance of Counsel

Regarding Petitioner's allegations about his trial counsel, Petitioner contends in this appeal that he was denied effective assistance due to counsel's (1) failure to investigate thoroughly; (2) failure to call the witnesses named by Petitioner; (3) failure to file a pre-trial motion to suppress illegally obtained evidence; (4) failure to raise the defenses of duress and necessity; (5) failure to object to various prejudicial and improper statements made by the State in its closing argument; (6) failure to impeach State witnesses when possible to do so; (7) failure to properly conduct discovery; (8) failure to object when the State selectively excluded African-American jurors; (9) failure to call an expert witness to challenge the prosecution's evidence when proper; (10) failure to move for a mistrial after jury misconduct; (11) failure to have a proper sentencing report for the court to review during the sentencing hearing; (12) failure to file a motion for probation where Petitioner was a first time offender; (13) failure to file a motion to dismiss charges because the indictments did not charge Petitioner with any crime relating to the reason the police were summoned to his house; and (14) failure to poll the jury to discover whether the verdict was unanimous. After a review of the record, we find no merit in Petitioner's allegations.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to

establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. This Court may not second-guess a reasonably based trial strategy and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). As discussed above, our review of the post-conviction court's determination on these issues is de novo. See Burns, 6 S.W.3d at 461.

First, Petitioner claims that Evans, his trial counsel, failed to sufficiently investigate his case. Evans testified at the post-conviction hearing that at the time of his reinstatement as Petitioner's counsel, he was familiar with the case because he was the attorney who originally handled Petitioner's case until after the preliminary hearing. After Evans was rehired, however, investigation of the case was somewhat limited by a lack of cooperation from Petitioner and the short space of time left until the trial. We reiterate that Evans was rehired only two weeks before trial began and furthermore, that Petitioner was warned by the court that if he fired his then counsel, the trial date would nevertheless remain firm.

As a corollary to his claim regarding improper investigation, Petitioner also alleges that Evans failed to talk to or call the witnesses on a list that Petitioner gave to him. The evidence presented regarding these fourteen "mystery witnesses" who could have testified consists solely of Petitioner's own statement to that effect. According to the record, the great weight of evidence leans toward a contrary notion that no such list existed. If, indeed, there was such a list, Petitioner kept it well-hidden from all three of his trial attorneys. Evans, Handel, and Durham all testified that they never received any witness names save those of Petitioner's mother and Hill, the two persons present in the house when the shooting occurred. Both testified at the trial and the post-conviction hearing. Petitioner's reluctance to provide his counsel with names of witnesses who may have information persisted in the face of repeated requests by all three attorneys. At the post-conviction hearing, Petitioner was asked again to provide the names of the fourteen persons that he claimed should have been interviewed and/or called to testify. In response, he gave two names but offered no proof what the testimony of the two persons would have been or how it would have helped his case. Moreover, the witnesses were not present in court to testify.

-10-

In its order denying relief, the post-conviction court noted the following: the only witnesses to the incident which gave rise to Petitioner's conviction testified for the defense at the hearing; Petitioner claimed that other witnesses existed, but did not present proof to the court as to who the witnesses were or what they would have said; and, Petitioner made no offer of proof as to witnesses, expectations, the effect of unfiled motions, or any of the other unsubstantiated allegations he made. The post-conviction court concluded that Petitioner failed to show that Evans was ineffective and failed to present any proof that, but for counsel's ineffective representation, the outcome would have been any different.

When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). As a general rule, this is the only way the petitioner can establish that (a) material witnesses existed and but for counsel's negligence, could have been discovered, (b) a known witness was not interviewed, (c) the failure to discover or interview said witness(es) inured to petitioner's prejudice, or (d) the failure to have a known witness present or called to testify resulted in the denial of critical evidence which prejudiced the petitioner's case. Id. It is elementary that neither a trial judge nor an appellate court can or should be called upon to speculate regarding whether further investigation would have been fruitful or what a witness might have said if called to testify. Courts cannot operate in a vacuum. Even if Petitioner was able to establish that his counsel was deficient in investigation of facts or known witnesses under Baxter v. Rose (which he did not), he is not entitled to relief on this ground unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of the defense if called. Id. Petitioner did not present the post-conviction court with any of the above and, therefore, failed to establish the prejudice requirement mandated by Strickland v. Washington.

Petitioner also asserts that Evans was ineffective when he failed to file a pre-trial motion to suppress evidence illegally obtained as a result of unlawful entry into his house. However, Evans testified that he was precluded from filing pre-trial motions by Shelby County Criminal Court Rule 6.03. This rule requires that "[a]ll preliminary motions, including motions to dismiss, and motions to suppress evidence . . . must be filed in writing not more than twenty (20) days after formal arraignment . . . " Although the rule provides that an extension may be granted upon request for "good cause," Petitioner offered no proof of circumstances that would have justified such a request or any evidence to support his contention that a motion to suppress would have been successful.

Moreover, Evans testified that he "extensively" argued that the entry of police into Petitioner's home was warrantless and illegal during the post-trial motion for judgment of acquittal and the motion for new trial. The trial record also reveals that, in ruling on post-trial motions, the trial court observed that Evans "forcibly argued to the jury that the officers had no right to go into [Petitioner's] house." Reviewing the trial record, we agree that Evans adequately developed this theory during his cross-examinations and closing argument.

-11-

In its order denying relief, the post-conviction court found that Evans was not ineffective for complying with the local rules and orders of the trial court which forbade filing of a motion to suppress. Further, the court stated that it was presented with no proof that any evidence which was admitted was obtained illegally, nor was there any proof presented that a factual basis existed which would support a motion to suppress. As a result, the court found Petitioner failed to carry the burden of proof as to these issues. We agree with the conclusions of the post-conviction court. The record shows that the evidence presented by Petitioner at the post-conviction hearing was insufficient to provide a basis for success on a motion to suppress. Even if Petitioner had presented proof that the police committed an illegal entry into Petitioner's home, an illegal stop or arrest does not warrant the total exclusion of what takes place afterward. State v. George Wesley Harville, Jr., No. 01C01-9607-CC-00300, 1997 WL 661726 at *3, Sequatchie County (Tenn. Crim. App., Nashville, Oct. 24, 1997). This is particularly true of crimes committed *subsequent* to the alleged Fourth Amendment violation. Id.; see United States v. Sprinkle, 106 F.3d 613, 619 (4th Cir. 1997) (where the suspect's response to an illegal stop was "itself a new, distinct crime, then the police may constitutionally arrest [him] for that crime."). We conclude that the record contains neither a factual nor legal basis for finding incompetence on the part of Evans or prejudice to Petitioner.

Next, we turn to the defendant's claim that Evans was ineffective when he failed to raise the defenses of duress and necessity. The defense of duress is defined as follows:

> (a) Duress is a defense to prosecution where the person or a third person is threatened with harm which is present, imminent, impending and of such a nature to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. The threatened harm must be continuous throughout the time the act is being committed, and must be one from which the person cannot withdraw in safety. Further, the desirability and urgency of avoiding the harm must clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct.

Tenn.Code Ann. § 39-11-504 (1997). The Sentencing Commission Comments to this section advise that, in order to excuse criminal conduct, the compulsion to commit the unlawful act must be immediate and imminently present and of such nature to produce a well-grounded fear of death or serious bodily harm. Id. In addition, there must be no reasonable means to escape the compulsion to commit the offense. See State v. Robinson, 622 S.W.2d 62, 73 (Tenn. Crim. App.1980). By contrast, this defense is "unavailable to a person who intentionally, knowingly, or recklessly becomes involved in a situation in which it was probable that the person would be subjected to compulsion." Tenn. Code Ann. § 39-11-504(b).

The record of the trial proceedings, the evidentiary hearings and the testimony of Petitioner's lawyer during the post-conviction hearing indicate that Petitioner did not have a legitimate defense of duress. This defense requires that a defendant experience a well-grounded apprehension of death

or serious bodily injury but be unable to withdraw in safety *before* he commits the illegal act. Granted, the police entered Petitioner's house. But the evidence adduced at trial shows that the officers informed Petitioner when they arrived that they merely wanted to talk with him. Petitioner refused to speak with the police and, instead, went into his house and armed himself. Petitioner fired first, and the record reveals no aggressive behavior on the part of the police which could instill a well-grounded fear of death or serious bodily harm sufficient to warrant this action. Petitioner had ample opportunity to safely withdraw, e.g., he had the option to put down his weapon. Furthermore, even if a duress defense was possible, Petitioner negated the defense by "intentionally, knowingly, or recklessly [becoming] involved in a situation in which it was probable that he would be subjected to compulsion" when he started shooting at the police. See Tenn. Code Ann. § 39-11-504(b).

The defense of necessity provides that a "defendant's conduct is justified if: (1) [t]he person reasonably believes the conduct is immediately necessary to avoid imminent harm; and (2) [t]he desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct." Tenn. Code Ann. § 39-11-609 (1997). The statutory provision "codifies the common law defense of necessity" and "excuses criminal conduct in those exceedingly rare situations where criminal activity is an objectively *reasonable* response to an *extreme* situation." Id. Sentencing Commission Comments (emphasis added).

The defenses of duress and necessity are similar both in form and in the policy supporting their availability. This Court has previously recognized a common law distinction between the two defenses:

> Common law historically distinguished between the defenses of duress and necessity. Duress was said to excuse criminal conduct where the actor was under an unlawful threat of imminent death or serious bodily injury, which threat caused the actor to engage in conduct violating the literal terms of the criminal law. While the defense of duress covered the situation where the coercion had its source in the actions of other human beings, the defense of necessity, or choice of evils, traditionally covered the situation where *physical* forces beyond the actor's control rendered illegal conduct the lesser of two evils. Thus, where A destroyed a dike because B threatened to kill him if he did not, A would argue that he acted under duress, whereas if A destroyed the dike in order to protect more valuable property from flooding, A could claim a defense of necessity.

State v. Green, 995 S.W.2d 591, 606 (Tenn. Crim. App. 1998) (quoting United States v. Bailey, 444 U.S. 394, 409-10, 100 S.Ct. 624, 634, 62 L.Ed.2d 575 (1980)) (emphasis added). The general policy behind both defenses reflects a judgment that the individual was justified in the commission of the unlawful act because (1) he was acting under threats or conditions which a person of ordinary firmness would have been unable to resist or (2) he reasonably believed that criminal action was

necessary to avoid a harm more serious than that sought to be prevented by the statute defining the defense. Id.

Since Petitioner has repeatedly and adamantly argued that he is not mentally incompetent, we adjudge his actions under normal standards regarding human behavior. A person of ordinary firmness should have been able to resist shooting at the police under Petitioner's circumstances. Further, criminal action was not necessary to avoid harm to Petitioner or the other inhabitants of the house. In sum, we find no incompetence on the part of Evans where he did not present defenses which have no merit. Even if, arguendo, Evans was ineffective by failing to present these defenses, Petitioner has failed to prove that the alleged ineffectiveness was prejudicial under Strickland.

Petitioner also contends that Evans was ineffective by failing to object to various prejudicial and improper statements made by the prosecutor in his or her closing argument, i.e., the prosecutor suggested that Petitioner was "mentally disturbed," the prosecutor misidentified the type of firearm used by Petitioner, and the prosecutor told the jury to use their "good old everyday horse sense in weighing the evidence . . . ." Petitioner alleges that using the phrase "horse sense" lowered the State's burden of proof.

After a review of the prosecutor's closing argument, we believe that the prosecutor did not refer to Petitioner specifically as being "mentally incompetent," but used the phrase in a generic sense while explaining to the jury the circumstances under which police officers were called to Petitioner's house and why law enforcement officials are not required to have a warrant to enter a dwelling in some situations, e.g., where mentally disturbed people may be present and could harm themselves or others. As for Evans' failure to object to the comments misrepresenting his firearm, we find no prejudice to Petitioner as a result of this. Granted, the record shows that the prosecutor referred to Petitioner's gun as a ".44 magnum." But, in the same breath, the prosecutor also called the weapon a ".44 weapon" and a ".44 caliber" pistol. In all likelihood, the jury noticed these inconsistencies, but it had the opportunity to observe the actual gun when it was introduced as evidence during trial. Consequently, Petitioner's argument that because the firearm was, in fact, a ".44 Special," he was "convicted on a weapon that didn't exist" is without merit. Finally, Petitioner has shown no prejudice by Evans' failure to object to the prosecutor's use of the phrase "horse sense." In sum, we conclude that Petitioner has failed to show the State's comments were prejudicial to his case and any error would be harmless.

Next, Petitioner argues that Evans was ineffective for failing to impeach State witnesses when possible to do so. Specifically, he asserts that the police officers' testimony at trial was inconsistent with the information contained in the police reports and the officers' collective testimony at the preliminary hearing. To provide an example, Petitioner testified at the post-conviction hearing that one of the police reports stated that the incident occurred outside the house and another said that it happened inside. Petitioner further claims that inconsistencies of this nature provided Evans with numerous opportunities to attack the credibility of the officers which Evans did not take. According to Petitioner, these omissions resulted in prejudice to Petitioner's case.

-14-

The post-conviction court heard testimony from Evans that he was familiar with the facts in Petitioner's case and that he had conducted an in-depth preliminary hearing cross-examination of the State's witnesses. This preparatory knowledge gave Evans the opportunity to examine those same witnesses during trial, at which time he inquired about any inconsistencies that existed between the testimony given during trial and those statements furnished during the preliminary hearing and in their reports. Evans further claimed that there were no major inconsistencies which assisted Petitioner's defense, and the post-conviction court accredited his testimony.

Our review of the record reveals that Petitioner has misstated the facts of what occurred during his trial. First, Evans did impeach at least one of the State's witnesses. Evans played the jury a tape of statements given by Officer Harris at the preliminary hearing which purportedly contained prior statements inconsistent with his testimony at trial. Although the record shows that Evans did not explore any other major inconsistencies, Petitioner did not offer proof that any discrepancies, other than the aforementioned conflict in the police reports, existed. Furthermore, we fail to see what bearing the location of the shooting would have on the major issues in this case other than to damage Petitioner's position. If the police had observed Petitioner outside his house with a gun, they could arguably have followed him into his house under various legal theories including hot pursuit, exigent circumstances, risk of danger to others, and risk of escape, to name a few. It is conceivable that Petitioner's counsel considered this possibility and decided to forgo impeachment on that basis. In sum, we agree with the post-conviction court's conclusion regarding this issue. Petitioner has failed to provide allegations of fact to support either a finding of incompetence on the part of trial counsel or prejudice to his defense.

Petitioner also asserts that Evans was ineffective for failing to properly conduct pre-trial discovery, as demonstrated by the fact that Evans had no knowledge that defense witness Hill had previously claimed that his statement to police was coerced. The record shows that Evans was cross-examined during the post-conviction hearing as to why he did not file a motion to suppress Hill's statement. The post-conviction court noted that there was no legal basis for Evans to suppress a witness' statement, "whether illegal or coerced or anything else." We are likewise unaware of any legal authority which would support such a motion. In addition, Hill testified at both the trial and the post-conviction hearing. Consequently, any misstatements or confusion regarding voluntariness or veracity could have been explored easily at that time. Since the record shows that Petitioner offered no other proof of Evans' deficient handling of discovery matters, we find the record devoid of any factual basis for Petitioner's allegations of prejudice.

Petitioner's next complaint concerns the composition of the jury. Specifically, Petitioner argues that Evans was ineffective for failing to object as the State "systematically" and "intentionally" excluded African-American jurors during voir dire. This allegation is unfounded. First and foremost, Petitioner's jury contained two African-American jurors. Second, the post-conviction court found that Petitioner presented no proof at the hearing to show anything resembling a "Batson" type of error. After a review of the record, we agree.

Petitioner further alleges that Evans was ineffective for failing to call an expert witness to challenge the State's evidence. Petitioner claims that experts should have been called "to challenge bullet holes and criminal intent." The post-conviction court found that Petitioner presented no proof in support of this assertion. Petitioner also failed to offer an expert to testify at the evidentiary hearing. Both are necessary in a challenge such as this. Neither the trial court nor the appellate court may be called upon to speculate as to what an expert would have said at trial. See Tenn. R. Evid. 103(a)(2); Alley v. State, 882 S.W.2d 810, 815-16 (Tenn. Crim. App. 1994) (offers of proof enable consideration of the issue on appeal). We agree with the post-conviction court's conclusion as we also find nothing in the record to indicate what an expert would have testified to or what difference expert testimony would have made in the outcome of Petitioner's trial. Hence, we also find no prejudice to Petitioner's case.

Petitioner continues with a claim that Evans was ineffective because he failed to move for a mistrial after discovering evidence of jury misconduct. Specifically, Petitioner insists that he was entitled to a mistrial because during deliberations the jury called the judge and both attorneys into the jury room to inquire, "Can we convict him of anything?" This argument is first made on appeal. Hence, it is waived. See Tenn. Code Ann. § 40-30-206(f)-(g) (1997). Even so, we note that because of the necessity in permitting jurors to avoid misunderstandings, virtually all jurisdictions including Tennessee hold that the judge has discretion to permit questions by jurors. See State v. Forbes, 918 S.W.2d 431, 451 (Tenn. Crim. App. 1995) (trial court has the authority to respond to jury questions with a supplemental instruction); State v. Moore, 751 S.W.2d 464, 467 (Tenn. Crim. App. 1988).

Petitioner also alleges that Evans was ineffective for failing to properly prepare Petitioner for the sentencing hearing. Petitioner claims (1) that Evans did not have a proper sentencing report for the court to review during the sentencing hearing and (2) that Evans failed to file a motion for probation, which was proper since Petitioner was a first time offender. Regarding the former, the record shows that Evans did all that he reasonably could do to assist Petitioner. Petitioner's sentencing report was incomplete because Petitioner had refused to cooperate with the probation office during its preparation of the report. After Evans explained to the court that the pre-sentencing questionnaire was not properly completed, and the probation office had no information because Petitioner was "distraught," the court agreed to let Petitioner testify as to those matters not contained in the report. However, Petitioner refused.

Respecting Petitioner's motion for probation, Tenn. Code Ann. § 40-35-303(a) states, in relevant part, that "[a] defendant shall be eligible for probation under the provisions of this chapter if the sentence actually imposed is eight (8) years or less . . . ." Petitioner, sentenced to three concurrent terms of nine (9) years, was not eligible for probation. Furthermore, the statute provides that "[t]here shall be no 'petition for probation' filed by the defendant." Tenn. Code Ann. § 40-35-303(b) (1997). Instead, "probation shall be automatically considered by the court as a sentencing alternative for eligible defendants . . . ." Id. Clearly, counsel had no duty to file such a motion, and Petitioner would be ineligible, even if he did.

Petitioner further claims that Evans was ineffective for failing to file a motion to dismiss the indictments against him. Petitioner argues that the indictments were void because they did not charge Petitioner with any crime relating to the reason that the police were initially summoned to his house. This claim has no merit. Prosecutors, both state and federal, are granted extraordinary discretion when determining whether an individual should be charged with a crime and what those charges will be. Few legal constraints exist. Probable cause, sufficiency of the evidence, sentencing possibilities and community goals are several examples. There is no law which requires the State to charge a defendant with a crime relating to its initial contact with a defendant.

Petitioner's last issue concerning ineffective assistance of counsel concerns Evans' failure to poll the jury and verify that the verdict was unanimous. Polling is discretionary. Tenn. R. Crim. P. 31(d) states that "the jury shall be polled at the request of any party or upon the court's own motion." Petitioner presented the trial court with no proof concerning what, if any, difference polling would have made in the outcome of Petitioner's trial or that the verdict was anything other than unanimous.

In sum, Petitioner failed to establish that the services rendered or the advice given him by his counsel were below the range of competence demanded of attorneys in criminal cases. Equally important, Petitioner did not show that any of counsel's decisions had an adverse effect on his defense. Accordingly, Petitioner is not entitled to relief based on his claims of ineffective assistance of trial counsel for the various reasons stated above.

B. Post-Conviction Court Errors

We turn now to the errors allegedly committed by the post-conviction court. Petitioner first contends that the post-conviction court committed reversible error when it failed to rule upon every issue as required by Tenn. Code Ann. § 40-30-211. After a review of the record and the post-conviction court's order denying relief, we disagree.

Petitioner relies on Tenn. Code Ann. § 40-30-211(b) which provides the following: "[u]pon final disposition of every petition, the court shall enter a final order . . . and shall set forth in the order or a written memorandum of the case all grounds presented, and shall state the findings of fact and conclusions of law with regard to each such ground." Petitioner's post-conviction petition contained ten issues. The post-conviction court heard arguments and proof over a period of months, beginning in April and extending well into October. When the proceeding was completed, the court issued an order denying relief which specifically addressed all of Petitioner's issues save one–whether the State's closing argument contained erroneous and inflammatory remarks sufficient to unfairly prejudice the jury against Petitioner.

Although the post-conviction court did not make extensive findings of fact pursuant to Tenn. Code Ann. § 40-30-211 regarding each and every issue, a failure to state findings of fact and conclusions of law does not always require a reversal or a remand for further findings. See State v. Swanson, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984). A record where the court order denying

post-conviction relief does not contain findings of fact and conclusions of law which are all-inclusive can still be sufficient to effectuate meaningful appellate review. See Rickman v. State, 972 S.W.2d 687, 692 (Tenn. Crim. App. 1997). Here, the post-conviction court's record was sufficient for us to do so.

With regard to the one issue not specifically addressed by the trial court in its order denying relief–whether the State's closing argument contained erroneous and inflammatory remarks sufficient to unfairly prejudice the jury–we note that we have already examined the State's closing argument during our review of Petitioner's ineffective assistance of counsel claims. We determined that the State's comments were harmless and did not prejudice Petitioner. Furthermore, the record shows that the post-conviction court did, in fact, hear Petitioner's argument on the issue of the State's closing remarks. Hence, the absence of specific findings of fact pertaining to this single issue was most likely an oversight on the part of the court. As a result, we find any error to be harmless. Petitioner is not entitled to relief on this issue.

Second, Petitioner contends that the post-conviction court erred when it found that Shelby County Criminal Court Rule 6.03 barred the filing of pre-trial motions by Petitioner's counsel. Rule 6.03 plainly requires that "[a]ll preliminary motions, including motions to dismiss, and motions to suppress evidence . . . must be filed in writing not more than twenty (20) days after formal arraignment . . . ." Although the rule provides that an extension may be granted for "good cause," the Petitioner offered no proof at the post-conviction hearing of extenuating circumstances which would justify such a request. Neither did Petitioner offer any evidence to support his contention that a motion to suppress, or any other motion for that matter, would have been successful. Petitioner is not entitled to relief on this issue.

Next, Petitioner submits that the post-conviction court committed reversible error when it refused to bifurcate the proceedings or grant a continuance so that a witness who was not present at the post-conviction hearing could testify at a later time. The witness in issue, Walker Gwinn, was one of two attorneys who handled Petitioner's direct appeal as of right of his convictions. Petitioner claims that Gwinn's expert testimony regarding what a proper attorney "would do" and "should have done" and what should have been "done differently" was crucial to his argument for ineffective assistance of counsel. Gwinn was subpoenaed to testify at Petitioner's post-conviction hearing on June 12, 1998, but failed to show.

It is well settled that the grant or denial of a continuance rests within the sound discretion of the trial judge. Harris v. State, 947 S.W.2d 156, 173 (Tenn. Crim. App. 1996) (citing State v. Morgan, 825 S.W.2d 113, 117 (Tenn. Crim. App. 1991)). When a defendant challenges the denial of a continuance a judgment will only be reversed if (1) the denial was an abuse of discretion, and (2) the defendant was prejudiced, to be proved by a showing that there is a reasonable probability that, had the continuance been granted, the results of the proceeding would have been different. Morgan, 825 S.W.2d at 117 (citing State v. Dykes, 803 S.W.2d 250, 257 (Tenn. Crim. App. 1990) (overruled on other grounds)); Baxter v. State, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973)).

There are three problems with Petitioner's contention here. First, the argument Petitioner presented to the post-conviction court, after which it refused to hear Gwinn's testimony, was based on different grounds than presented in this appeal. During the post-conviction proceeding, Petitioner argued that Gwinn's testimony was relevant because Gwinn's assistance as counsel during his appeal was ineffective. If so, this complaint should have been alleged in the petition. It was not. After the court noted that Gwinn's name was not mentioned in any of the pleadings, it correctly decided that Gwinn's testimony was unnecessary to decide the matters before it and denied Petitioner's request. Not until this appeal did Petitioner argue that Gwinn's testimony was essential to provide evidence against Evans.

The second problem with Petitioner's argument lies with the record which reveals that Petitioner made no offer of proof during his post-conviction proceedings as to what facts Gwinn would testify to or why they were critical to his argument. This omission was conceivably a factor in the post-conviction court's decision that Gwinn's testimony was unnecessary. After reviewing the record, we find that the court did not abuse its discretion when it denied Petitioner's request for a continuance. And, since Petitioner did not offer any proof that the result of the proceeding would have been different with Gwinn's testimony, Petitioner was not prejudiced by its absence.

The third problem with Petitioner's argument that he was unfairly denied a continuance lies with the fact that the proceeding was, in fact, continued. Gwinn did not show up to testify during the hearing on June 12, 1999. However, the post-conviction court granted the State's motion to continue in a hearing on October 16, 1999, and the evidentiary hearing was concluded on October 26, 1999. The record does not show whether Petitioner made another attempt to secure testimony from Gwinn. Interestingly, Petitioner argued against the October continuance. Petitioner is not entitled to relief on this issue.

Petitioner also argues that the judge's refusal to disqualify himself because of prejudice and bias against Petitioner constitutes error by the court. This allegation stems from a statement the post-conviction judge made to Petitioner when Petitioner requested permission from the court to remove Johnson as his counsel and proceed pro se. After listening to Petitioner's request, the judge advised Petitioner that he should heed his attorney's advice and "not try to run the show because there was an old saying, 'anyone who represents himself has a fool for a client.'" Thereafter, Petitioner filed a motion "for recusal of presiding judge" based upon this statement. In the order denying Petitioner's motion, the judge explained that he in no way implied or intended to imply that the Petitioner was a "fool." Instead, the judge was merely encouraging Petitioner to cooperate with his attorney.

Disqualification of a judge is governed by Tennessee Supreme Court Rule 10, Canon 3(E). This rule states, in relevant part, that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." Circumstances where this is required include, but are not limited to, situations where "the judge has a personal bias or prejudice concerning a party . . . ." Tenn. Sup. Ct. R. 10, Canon 3(E)(1)(a). A judge's determination of

whether he will disqualify himself lies within his discretion. <u>Wiseman v. Spaulding</u>, 573 S.W.2d 490 (Tenn. Ct. App. 1978).

We find the judge's comment to be of a brief and general nature and not specifically directed at Petitioner. Having reviewed the record and the judge's comment in context, we find no reasonable basis for questioning the trial court's impartiality. Petitioner is not entitled to relief on this issue.

Petitioner's next issue, that the trial court did not have jurisdiction to convict him because one of the indictments failed to include the mens rea of "intentionally" in its description of the offense, is also without merit. When Petitioner raised this issue during his post-conviction proceeding, the State objected on the ground that Petitioner was precluded from arguing the validity of the indictment at this juncture, claiming the issue had been "waived." The court sustained the State's objection and the matter was not discussed further at that time. In its order denying relief, the post-conviction court concluded that "[t]he indictment sufficiently placed the [Petitioner] on notice of the charges against him . . . ." The post-conviction court's decision that Petitioner's indictment was sufficient was correct, but not based upon the State's contention that the issue was waived.

Waiver provisions do not apply to defects indicating that a court lacked jurisdiction or that the indictment failed to state an offense. Tenn. R. Crim. P. 12(b)(2); <u>State v. Carter</u>, 988 S.W.2d 145, 148 (Tenn. 1999). Those defects may be "noticed by the court at any time during the pendency of the proceedings." Tenn. R. Crim. P. 12(b)(2). Thus, the issue of Petitioner's indictment was not waived by the failure to present the ground for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented.

On the other hand, an indictment is valid if it provides sufficient information to enable the accused to know the accusation to be answered, to furnish the court with an adequate basis for proper entry of judgment, and to protect the accused from double jeopardy. <u>State v. Hill</u>, 954 S.W.2d 725, 727 (Tenn. 1997). In <u>State v. Hill</u>, the Tennessee Supreme Court held:

> that for offenses which neither expressly require nor plainly dispense with the requirement for a culpable mental state, an indictment which fails to allege such mental state will be sufficient to support prosecution and conviction for that offense so long as
>
> (1) the language of the indictment is sufficient to meet the constitutional requirements of notice to the accused of the charge against which the accused must defend, adequate basis for entry of a proper judgment, and protection from double jeopardy;
>
> (2) the form of the indictments meets the requirements of Tenn.Code Ann. § 40-13-202; and

(3) the mental state can be logically inferred from the conduct alleged.

Id. at 726-27. Subsequently, our supreme court held that an indictment which includes a reference to the criminal statute that sets forth the mens rea is sufficient to give a defendant notice of the applicable mental state. State v. Sledge, 15 S.W.3d 93, 95 (Tenn. 2000); Carter, 988 S.W.2d at 149 (citing Ruff v. State, 978 S.W.2d 95, 100 (Tenn. 1998)). "Thus, where the constitutional and statutory requirements outlined in Hill are met, an indictment that cites the pertinent statute and uses its language will be sufficient to support a conviction." Carter, 988 S.W.2d at 149 (quoting Ruff, 978 S.W.2d 95, 100 (Tenn. 1998)).

In the instant case, the challenged indictment states, in pertinent part, as follows:

> RONNIE BRADFIELD on February 21, 1992, in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully attempt to commit the offense of MURDER FIRST DEGREE as defined in T.C.A. 39-13-202 in that he, the said RONNIE BRADFIELD did unlawfully and deliberately and with premeditation attempt to kill G.W. Harris, in violation of T.C.A. 39-12-101, against the peace and dignity of the State of Tennessee.

Petitioner's indictment included the proper section from Tennessee Code Annotated and this, in turn, provided sufficient notice to Petitioner of the charges against him. In addition, we hold under Hill and Ruff that the mens rea of "intentionally" can be logically inferred from the allegation that the act was committed with premeditation. Defendant is not entitled to relief on this issue.

Petitioner's final two issues on appeal concern the jury's conduct during deliberation and the trial court's instructions to the jury. Regarding the first, Petitioner contends that the jury behaved improperly when it asked whether they could "find him guilty of anything." Petitioner alleges that this query indicated that the jury convicted Petitioner "based upon a duty to protect society," instead of upon the law and instructions given them. Petitioner's second argument claims that instructions for "duress" and "necessity" should have been given the jury. These two issues are restatements of allegations formerly addressed in this appeal but couched in terms of ineffective assistance of counsel. Pursuant to those claims, we have already determined that the jury's conduct did not result in prejudice to Petitioner and that the facts of Petitioner's case did not warrant or support the defense of necessity or duress. Notwithstanding this fact, these issues are also waived.

Waiver can occur in various ways. The Tennessee Rules of Appellate Procedure provide that

> in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the

same was specifically stated in a motion for new trial; otherwise such issues will be treated as waived.

Tenn. R. App. P. 3(e). Under the Post-Conviction Procedure Act, waiver occurs where "the petitioner personally or through an attorney failed to present [the ground] for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." Tenn. Code Ann. § 40-30-206(g) (1997). Waiver in a post-conviction context is determined by an objective standard under which a petitioner is bound by the action or inaction of his attorney. House v. State, 911 S.W.2d 705, 714 (Tenn. 1996). The presumption that a ground not raised has been waived is rebuttable, however. Tenn. Code Ann. § 40-30-206(g). In order to rebut the presumption, the petition must contain "allegations of fact supporting each claim for relief set forth in the petition and allegations of fact explaining why each ground was not previously presented in any earlier proceeding." Tenn. Code Ann. § 40-30-204(e) (1997).

The two issues discussed above are predicated on error committed during trial and were not raised in Petitioner's motion for new trial. These issues were perfectly suited for adjudication in the trial court pursuant to a motion for new trial or, if inclusion in a motion for new trial was not possible for good reason, presented in a direct appeal to this Court. Petitioner has not rebutted the presumption of waiver by supplying this Court with any facts which explain why these claims were not previously presented or, in the alternative, presented in an appeal under the plain error doctrine. See Tenn. R. Crim. P. 52(b). We find no reason not to assume that we may determine waiver of issues in accordance with established legal procedure and our goals of finality in adjudication. Accordingly, Petitioner is not entitled to relief on these issues.

## IV. Conclusion

After a thorough review of the record and the law applicable to the issues raised herein, we find that the Petitioner has failed to prove the allegations contained in his post-conviction petition. Accordingly, the judgment of the post-conviction court is AFFIRMED.

_____
THOMAS T. WOODALL, JUDGE